UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES E. CRAYON,<br><br>                    Plaintiff,<br><br>        v.<br><br>RICK HILL, et al.,<br><br>                    Defendants. | No.  2:13-cv-0350 MCE KJN P<br><br>ORDER AND<br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before court is defendant Wang's motion for summary judgment. (ECF No. 81.)  Defendant moves for summary judgment on the merits of plaintiff's claims and on the grounds that plaintiff failed to exhaust administrative remedies.  For the reasons stated herein, the undersigned recommends that defendant's motion be granted.

II. Preliminary Matters

On August 31, 2015, plaintiff filed a motion for an extension of time, although it is not entirely clear why plaintiff filed this request.  (See ECF No. 87.)  Plaintiff indicates that he requires additional time to complete discovery and possibly to file an opposition to defendants' summary judgment motion.  Plaintiff states that the grounds of the request are that the law library was closed beginning on August 20, 2015.

1

Court records indicate that on July 16, 2015, plaintiff filed a motion for an extension of time to file his opposition to defendant's summary judgment motion. (ECF No. 83.) On July 23, 2015, the undersigned granted plaintiff a thirty day extension to file his opposition. (ECF No. 84.) Plaintiff filed his opposition to defendant's summary judgment motion on August 10, 2015. (ECF No. 85.) Because plaintiff filed his opposition before he filed the pending motion for extension of time, the August 31, 2015 motion for extension of time to file an opposition is denied as unnecessary.

To the extent plaintiff is requesting additional time to conduct discovery, his request is not well supported. Federal Rule of Civil Procedure 56(d) provides that the court may defer consideration of a summary judgment motion if a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition. In the motion for extension of time, plaintiff appears to argue that he could not conduct discovery due to inadequate law library access. However, discovery closed on April 30, 2015. (See ECF No. 69 (scheduling order).) Plaintiff alleges that he was denied law library access beginning on August 20, 2015. Accordingly, the undersigned finds that plaintiff has not shown good cause to grant him additional time to conduct discovery.

On September 14, 2015, plaintiff filed a summary judgment motion. (ECF No. 88.) Pursuant to the January 5, 2015 scheduling order, dispositive motions were due on or before June 30, 2015. (ECF No. 69.) Accordingly, plaintiff's summary judgment motion is untimely. It is possible that plaintiff's August 31, 2015 motion for an extension of time also seeks an extension to file a cross-motion for summary judgment. However, plaintiff's inability to access the law library beginning on August 20, 2015 does not explain why he could not file a timely cross-motion before the dispositive motion deadline of June 30, 2015. Accordingly, plaintiff's motion for summary judgment should be denied as untimely.

III. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

1  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
2  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return
3  a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436
4  (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d
5  1564, 1575 (9th Cir. 1990).

6       In the endeavor to establish the existence of a factual dispute, the opposing party need not
7  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
8  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
9  trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce
10 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
11 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
12 amendments).

13      In resolving a summary judgment motion, the court examines the pleadings, depositions,
14 answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R.
15 Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at
16 255. All reasonable inferences that may be drawn from the facts placed before the court must be
17 drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences
18 are not drawn out of the air, and it is the opposing party's obligation to produce a factual
19 predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F.
20 Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to
21 demonstrate a genuine issue, the opposing party "must do more than simply show that there is
22 some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could
23 not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
24 trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

25      By contemporaneous notice provided on August 16, 2013(ECF No. 22), plaintiff was
26 advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal
27 Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*);
28 Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

IV. Legal Standard for Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Woodford v. Ngo, 548 U.S. 81, 90 (2006). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. See Booth, 532 U.S. at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford, 548 U.S. at 90-93. "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' -- rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). On January 28, 2011, California prison regulations governing inmate grievances were revised. Cal. Code Regs. tit. 15, § 3084.7. Now inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the

5

Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services. A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, §§ 3084.2(a)(4). An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Bock, 549 U.S. at 204, 216. In Albino, the Ninth Circuit agreed with the underlying panel's decision "that the burdens outlined in Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996), should provide the template for the burdens here." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). A defendant need only show "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable. See Albino, 697 F.3d at 1030-31.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino, 747 F.3d at 1172-73. When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as effectively unavailable. Sapp v. Kimbrell,

6

623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

Where a prison system's grievance procedures do not specify the requisite level of detail for inmate appeals, Sapp, 623 F.3d at 824, a grievance satisfies the administrative exhaustion requirement if it "alerts the prison to the nature of the wrong for which redress is sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). "A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Griffin, 557 F.3d at 1120.

If under the Rule 56 summary judgment standard, the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003), overruled on other grounds by Albino, 747 F.3d 1162.

V. Plaintiff's Claims

This action is proceeding on the first amended complaint as to defendant Nurse Wang. (ECF No. 15.) Plaintiff alleges that on or around July 7, 2012, he filed a grievance against defendant Wang for ignoring him and speaking to him in a hateful voice. (Id. at 5.) Plaintiff began refusing to take medication from defendant Wang because he was afraid that defendant Wang might do something to him. (Id.) On July 8, 2012, plaintiff filed another grievance against defendant Wang. (Id.). In this grievance, plaintiff wrote that he was refusing to allow defendant Wang to give him insulin injections or any other medication. (Id. at 44.)

On July 11, 2012, all diabetic inmates, including plaintiff, were released from their cells to get their medication. (Id. at 6.) Defendant Wang asked plaintiff why he refused to take his medication and insulin shots from defendant. (Id.) Plaintiff replied that he did not trust

defendant Wang. (Id.)

Plaintiff alleges that defendant Wang then gave him his medication in a cup. (Id.) When plaintiff returned to his cell, he became ill and was taken to the emergency room. (Id. at 6-7.) Plaintiff alleges that the doctor at the emergency room told plaintiff that he had been given medication that diabetics are not supposed to take. (Id.) Plaintiff alleges that defendant Wang intentionally gave him the wrong medication in retaliation for plaintiff filing grievances against him. (Id.)

As legal claims, plaintiff alleges that defendant Wang violated his right to adequate medical care in violation of the Eighth Amendment and retaliated against him for filing grievances.

VI. Motion for Summary Judgment: Did Plaintiff Fail to Exhaust Administrative Remedies?

Defendant argues that plaintiff failed to exhaust administrative remedies. In particular, defendant argues that plaintiff's grievance no. HC 12-14414 did not exhaust administrative remedies because it was cancelled on procedural grounds. The undersigned summarizes the relevant record submitted by defendant herein.

On July 31, 2012, plaintiff filed grievance no. HC 12-14414, regarding the July 11, 2012 incident involving defendant Wang. (ECF No. 81-6 at 70.) On August 10, 2012, this grievance was "screened out" and rejected because it was not correctly filled out -- because plaintiff did not request anything. (Id. at 80.) The August 10, 2012 response stated that plaintiff could not appeal the response screening out the appeal unless he alleged that the reason the grievance was screened out was inaccurate. (Id.)

On November 9, 2012, plaintiff appealed the decision screening out grievance no. HC 12-14414, to the second level of review. (Id. at 75.) However, in this appeal, plaintiff did not challenge the decision to screen out the grievance for failing to include a request for relief. (Id. at 75-79.) Instead, plaintiff argued the merits of his claims against defendant Wang. (Id.)

On December 7, 2012, plaintiff's second level grievance no. HC 12-14414 was cancelled because it duplicated a grievance that had already been accepted, reviewed and completed at the second level of review at Folsom State Prison. (Id. at 75.) This response does not identify the

number of the other grievance. The response further stated,

> CCR, Title 15, Section 3084.6(c)(2) states, "The appeal duplicates an inmates or parolee's previous appeal upon which a decision has been rendered or pending," and Section 3084.6(a)(5) states, "Erroneous acceptance of an appeal at a lower level does not preclude the next level of review from taking appropriate action, including rejection or cancellation of the appeal." You have rewritten and resubmitted an appeal that has already been accepted, reviewed and completed at the 2nd level at Folsom State Prison. This appeal has reached the highest level that it can go within the prison. You received a second level response letter in October. Do not resubmit this appeal to Folsom State Prison; this appeal has been completed. If you want to send it to the Office of Third Level appeals you may do so, but you must include <u>ALL ORIGINAL PAPERWORK</u> that was returned to you for this appeal or it will be rejected.

(Id.)

On January 1, 2013, plaintiff appealed the December 7, 2012 decision cancelling grievance no. HC 12-14414, to the third level of review. (Id. at 84.) Plaintiff wrote, in part, "I'm responded to everything that being processes to the medical coordinator cause of my lack of comprehensive not understanding." (Id. at 84.) Plaintiff went on to request damages for the "unprofessional treatment" he received from defendant Wang. (Id.)

On April 24, 2013, plaintiff's January 1, 2013 grievance was cancelled at the third level of review. (Id. at 91.) The response states that the grievance was cancelled and returned to plaintiff because it was duplicative:

> Your appeal was cancelled by the institution at a lower level of review. Contact the Health Care Appeal Coordinator at your institution if you need further assistance in filing a health-care related appeal.
>
> Your appeal was cancelled on December 7, 2012 at the institution level for being a duplicative appeal. The CCR, Title 15, Section 3084.6(c)(2) states, "The appeal duplicates an inmate or parolee's previous appeal upon which a decision has been rendered or is pending," and Section 3084.6(a)(5) states, "Erroneous acceptance of an appeal at a lower level does not preclude the next level of review from taking appropriate action, including rejection or cancellation of the appeal."
>
> Your appeal is to be reviewed by the Health Care Appeal Coordinator at your institution if you need further assistance.

(Id. 91-92.)

9

A note at the bottom of the response states,

> Cancellation Note: Once an appeal has been cancelled that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision to the Office of Third Level Appeals. When an appeal is cancelled, your administrative remedies have not been exhausted pursuant to Title 15 CCR Section 3084.1(b)

(Id. at 92.)

Defendant argues that plaintiff failed to exhaust administrative remedies because grievance no. HC 12-14414 was denied on procedural grounds as duplicative of another grievance.

On August 10, 2015, plaintiff filed an opposition to defendant's summary judgment motion. (ECF No. 85.) Plaintiff's opposition does not address defendant's argument that plaintiff failed to exhaust administrative remedies.

On September 14, 2014, plaintiff filed a pleading titled "Motion for Third Level Appeal." (ECF No. 89.) In this pleading, plaintiff appears to argue that due to his mental disabilities, prison officials should have helped him to file his grievances. However, also attached as an exhibit to this pleading is a response to his grievance no. FSP HC 12014506, dated October 22, 2012. (ECF No. 89 at 11.) To the extent plaintiff requests that the court consider the documents related to grievance no. FSP HC 12014506 attached to this pleading, plaintiff's motion is granted.

The response to grievance no. FSP HC 12014506 states that grievance no. FSP HC 12014506 was being cancelled because it was duplicative of grievance no. HC 12-14414:

> Your appeal is being cancelled and returned to you for the following reason(s):
>
> Duplicate: CCR, Title 15, Section 3084.6(c)(2) states, "The appeal duplicates an inmate or parolee's previous appeal upon which a decision has been rendered or is pending," and Section 3084.6(a)(6) states, "Erroneous acceptance of an appeal at a lower level does not preclude the next level of review from taking appropriate action, including rejection or cancellation of the appeal." This appeal is a duplicate of FSP HC 12014414.

(Id)

For the following reasons, the undersigned finds that defendant has not demonstrated that plaintiff failed to exhaust administrative remedies. The record is not clear that grievance no. HC

10

12-14414 was properly rejected as duplicative of another grievance. Plaintiff has presented evidence that on October 22, 2012, grievance no. FSP HC 120145506 was rejected as being duplicative of grievance HC 12-14414. In that case, then it is not clear why grievance no. HC 12-14414 was not processed on the merits, unless there is yet a third grievance raising the claims against defendant Wang that was processed on the merits. Defendant does not identify the grievance number of the grievance for which that grievance no. HC 12-14414 was found to be duplicative. Without further clarification, the undersigned cannot find that grievance no. HC 12-14414 was properly denied as duplicative.[1] Accordingly, defendant is not entitled to summary judgment based on plaintiff's alleged failure to exhaust administrative remedies.

VII. Motion for Summary Judgment on the Merits

A. Retaliation

*Legal Standard*

A prisoner who alleges that he was subjected to retaliation for exercising his First Amendment rights must prove the following five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2004).

////

---

[1] The undersigned notes that defendant has provided an August 1, 2012 memorandum addressed to plaintiff from the Folsom State Appeals Coordinator for grievance no. FSP 01-12-00786. (ECF No. 81-6 at 72.) The response states, "The enclosed documents are being returned to you for the following reasons: Be advised that this appeal issue should be submitted to the appropriate CDCR unit for review. Your appeal has been forwarded to health care staff for review and processing." (Id.) The relevance of this document to defendants' summary judgment motion is not clear. If defendant is claiming that grievance no. HC 12-14414 duplicated grievance no. FSP 01-02-00786, he has not made this showing. Finally, the undersigned observed that the language of the second level decision rejecting grievance HC 12-14414 is not clear, particularly with respect to the steps plaintiff was directed to take. However, because it is not clear that grievance no. HC 12-14414 was properly rejected as duplicative, the undersigned need not consider the impact of the confusing language on plaintiff's exhaustion of administrative remedies.

In order to satisfy the causation element, the plaintiff must show that the constitutionally protected conduct was a "substantial" or "motivating" factor for the alleged retaliatory action. Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). In order to demonstrate that the alleged adverse action did not advance a legitimate correctional goal, a plaintiff must show "that the defendant's actions were arbitrary and capricious or that they were unnecessary to the maintenance of order in the institution." Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012) (internal quotations and citations omitted).

*Analysis*

Defendant does not dispute that plaintiff was taken to the emergency room on July 11, 2012. Defendant moves for summary judgment on grounds that there is no evidence that defendant gave plaintiff the wrong medication on that date or that plaintiff's symptoms were caused by his ingestion of the wrong medication. In other words, defendant argues that plaintiff cannot show that defendant Wang took an adverse action against him. In support of this argument, defendant submitted his own declaration which states, in relevant part, "On July 11, 2012, I intended to give plaintiff the same two pills I have been giving him in the mornings for the prior approximately two years; therefore, to the best of my knowledge, I gave plaintiff those same two pills on July 11, 2012." (ECF No. 81-4 at 1.)

Defendant also argues that plaintiff has no evidence that defendant gave him the wrong medication. Defendant first argues that plaintiff gave contradictory testimony at his deposition regarding whether he looked at the medication before taking it.

At his deposition, plaintiff first testified that he looked at the two pills defendant Wang gave him on July 11, 2012. (Plaintiff's deposition at 41.) Plaintiff testified that those pills looked like the pills he had been getting for the past two years in the morning. (Id.) Plaintiff testified that one of the pills was Metformin and the other was Symvastatin. (Id. at 42.) Plaintiff testified that he recognized both pills. (Id. at 43.) This testimony would undermine any claim by plaintiff that defendant Wang gave him the wrong medication. However, later in his deposition, plaintiff testified that he did not look at the pills that defendant Wang gave him that morning, contradicting his earlier testimony. (Id. at 68.)

In the summary judgment motion, defendant argues that plaintiff's contradictory deposition testimony demonstrates that he cannot show that defendant Wang gave him the wrong medication.

Under the "sham affidavit rule," which is most often invoked in the context of a motion for summary judgment, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Van Asdale v. International Game Technology, 577 F.3d 989, 998 (9th Cir. 2009) (citing Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991)). In essence, defendant Wang argues that the sham affidavit rule should apply to contradictory statements made during the same deposition, and that plaintiff's conflicting deposition testimony regarding whether he actually looked at the pills and recognized them cannot create an issue of fact.

Courts generally do not apply the sham affidavit rule to conflicting statements within the same deposition. See Kimble v. State Farm Fire and Cas. Co., 2013 WL 4501023 at * 4 (N.D. Ohio 2013) ("The court rejects defendants' assertion that the sham affidavit doctrine…enables courts to disregard deposition testimony."); Gullick v. Ott, 517 F.Supp.2d 1063, 1075 (W.D. Wis. 2007) ("sham affidavit" rule does not apply to inconsistencies within same deposition); Kelly v. Chambers, 2009 WL 765267 at * 5 (N.D. Ill. 2009) ("Although such "sham affidavits" are looked down upon, the rationale for disfavoring "sham affidavits" does not extend to discrepancies within the same deposition."). "In short, the decision as to what to believe and what to disregard in plaintiff's deposition testimony is entrusted to the jury at trial, not to the court on summary judgment." Kimble, 2013 WL 4501023 at *4.

Based on the discussion above, the undersigned does not find that defendant is entitled to summary judgment based on plaintiff's conflicting deposition testimony regarding whether or not he looked at the pills defendant gave him and recognized them. Instead, if appropriate, a jury should evaluate these conflicting statements.

Defendant next argues that there is no evidence that defendant Wang gave plaintiff the wrong medication or that the medication defendant gave him caused his symptoms that led to his transport to the emergency room. As discussed above, in his declaration defendant states that to

the best of his knowledge, he gave plaintiff the correct medication.

Defendant also argues that plaintiff's deposition testimony regarding the cause of his symptoms cannot be considered because it is hearsay. Defendant cites plaintiff's deposition testimony that the doctor at the hospital told him that his symptoms were not caused by food poisoning. (Plaintiff's deposition at 56.) Plaintiff testified that the doctor told him that his symptoms were caused by plaintiff having taken medication that diabetics were not supposed to take. (Id.) Plaintiff is diabetic. Plaintiff testified that the doctor told him that he had been given the wrong medication. (Id.)

Plaintiff's deposition testimony that the doctor at the hospital told him that he had been given the wrong medication and that is what caused his symptoms is hearsay and cannot properly be considered in opposition to a summary judgment motion. See Jones v. Williams, 791 F.3d 1023, 1032 (9th Cir. 2015) (citing Fed. R. Evid. 801(c)); Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001) (holding that it was an abuse of discretion for the district court, at the summary judgment stage, to consider information from an affidavit based on inadmissible hearsay rather than the affiant's personal knowledge).

Defendant also argues that plaintiff has no medical records supporting his claim that he was given the wrong medication. At his deposition, plaintiff was asked if he had any medical records to support this claim. (Plaintiff's deposition at 70.) Plaintiff cited two medical records, which defendant has provided. (Id. at 70, 71.) The first document is a form from the emergency room signed by a physician. (ECF No. 81-6 at 65.) This form describes plaintiff's symptom as abdominal pain. (Id.) The form contains no information regarding the cause of this symptom. (Id.) The second document is a form showing results from a blood test performed on plaintiff at the hospital. (Id. at 67.) According to plaintiff, this document shows that his glucose was a little high. (Plaintiff's deposition at 71.) This document contains no information regarding the cause of plaintiff's symptoms. (ECF No. 81-6 at 67.)

Plaintiff's opposition contains no admissible evidence supporting his claim that defendant Wang gave him the wrong medication or that his ingestion of the wrong medication caused his symptoms. (ECF No. 85.)

The undersigned has looked through the court record to determine whether plaintiff has submitted any documents supporting his claim that he was given the wrong medication. The exhibits attached to the original complaint contain no records supporting this claim. (See ECF No. 1 at 21-24 (medical records).) The exhibits attached to the amended complaint contain no records supporting this claim. (See ECF No. 15 at 22-42) (medical records). The exhibits attached to plaintiff's motion for summary judgment contain no records supporting this claim. (See ECF No. 88 at 11-14 (medical records).)

The undersigned can locate only two medical records addressing a possible cause for plaintiff's symptoms. One is a note by Nurse Castro prepared following plaintiff's return to the prison from the emergency room. (ECF No. 15 at 25.) This note states that plaintiff was sent to the emergency room due to confusion and abdominal pain (which is consistent with the other medical records). (Id.) In relevant part, the note states, "Consider post-ictal attack." (Id.) "Postictal" refers to an altered state of consciousness after an epileptic attack. See http://www.merriam-webster.com/medical/postictal. The reference to a "post-ictal" attack was apparently based on reports that plaintiff reported confusion. (ECF No. 15 at 25.)

The order authorizing plaintiff's transfer to the emergency room from the prison, signed by the Chief Medical Officer, states that plaintiff had "suspect peritonitis." (Id. at 23.) Peritonitis is an inflammation of the membrane that lines the inner abdominal wall. See http://www.mayoclinic.org/diseases-conditions/peritonitis/basics/definition/con-20032165.

Neither of the two records discussed above makes any reference to plaintiff having been given the wrong medication.

The undersigned agrees with defendant that plaintiff has no evidence that defendant gave him the wrong medication or that his symptoms were caused by having taken the wrong medication. For this reason, the undersigned finds that plaintiff has not demonstrated that defendant Wang took an adverse action against him. Accordingly, defendant Wang should be granted summary judgment as to plaintiff's retaliation claim on this ground.

////

////

B. <u>Eighth Amendment</u>

*Legal Standard*

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u> 429 U.S. 97, 106 (1976). An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1991), <u>overruled on other grounds</u> by <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" <u>McGuckin</u>, 974 F.2d at 1059 (quoting <u>Estelle</u>, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." <u>Id.</u> at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. <u>Farmer</u>, 511 U.S. at 834. In general, a prisoner evinces deliberate indifference by showing that prison officials denied, delayed, or intentionally interfered with medical treatment, or the prisoner points out the deficient way in which prison officials provided medical care. <u>Hutchinson v. United States</u>, 838 F.2d 390, 393-94 (9th Cir. 1988). However, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980) (citing <u>Estelle</u>, 429 U.S. at 105-06). <u>See also</u> <u>Toguchi v. Soon Hwang Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); <u>McGuckin</u>, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires

'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986).)

*Analysis*

Plaintiff alleges that defendant Wang violated his Eighth Amendment right to adequate medical care by intentionally giving him the wrong medication on July 11, 2012. In other words, plaintiff alleges that defendant Wang intentionally interfered with his medical care.

For the same reasons plaintiff's related retaliation claim fails, plaintiff's Eighth Amendment claim fails. Plaintiff has provided no evidence that defendant Wang gave him the wrong medication or that his ingestion of the wrong medication caused the symptoms that led to his transfer to the emergency room. For these reasons, defendant Wang should be granted summary judgment as to plaintiff's Eighth Amendment claim.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for extension of time to conduct discovery, etc. (ECF No. 87) is denied;

2. Plaintiff's motion for the court to consider his third level appeal (ECF No. 89) is granted in part, as discussed above; and

IT IS HEREBY RECOMMENDED that:

1. Defendant's summary judgment motion (ECF No. 81) be granted;

2. Plaintiff's summary judgment motion (ECF No. 88) be denied as untimely.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections.

////

////

////

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 21, 2016

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Cray350.sj